245 So.2d 190 (1971)
Barney LITCHFIELD
v.
G.M. DUEITT.
No. 46076.
Supreme Court of Mississippi.
February 15, 1971.
Rehearing Denied March 22, 1971.
*191 Bryant & Stennis, Gulfport, Gex, Gex & Phillips, Bay St. Louis, Donald M. Briskman, Mobile, Ala., for appellant.
A.M. Murphy, Lucedale, for appellee.
JONES, Justice:
This case comes on appeal from the Circuit Court of Hancock County and is a case of first impression in this State. It involves the Uniform Commercial Code. The case was tried under the Alabama law, but, the portions of the Uniform Commercial Code here involved are verbatim in Alabama and Mississippi. The sections involved in Mississippi are subdivisions of section 41A of our Code and title 7A of the Alabama Code, to-wit: 2-403, 2-104, and 1-201(9).
Subsections (2) and (3) of Section 2-403 read as follows:
(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.
Subsection (1) of Section 2-104 of the Alabama and Mississippi Acts defines a "merchant" as:
(1) "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.
Subsection (9) of Section 1-201 defines "buyer in tthe ordinary course of business" as:
(9) "Buyer in ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker.
There is very little, if any, conflict in the evidence. This was a replevin suit filed by appellant to recover possession of one Lima-type 24 Crane, serial number 3330-21. The appellant requested a peremptory instruction to the effect that appellant was entitled to possession. It was refused. After the verdict, appellant filed a motion for judgment notwithstanding the verdict. This was also overruled. Appellant's assignments of error are: (1) There was error in refusing the peremptory instruction; (2) The verdict was against the overwhelming weight of the testimony; (3) The verdict was contrary to Alabama law and evidenced bias, passion and prejudice; and (4) The court erred in granting a certain instruction to the defendant.
Appellee filed a cross-appeal relating to damages but in view of our disposition of the case, it is unnecessary to reach that question.
The facts are substantially these. Appellee was the owner of the crane hereinbefore described. He purchased same for $5,000 cash and financed $5,000 with C.I.T. evidenced by written security on the crane. *192 Appellee was a resident of Greene County, Mississippi, and the sales contract was recorded in Greene County. In 1968 the equipment was leased to a pipeline dredging company and sent to Dyersburg, Tennessee. While on the job there, it was somehow dropped into a river and remained submerged for about ninety hours. Upon recovery from the river, it was delivered to the Allis-Chalmers Shop in Dyersburg where it remained for approximately two months. At the time of the accident, appellee was two months behind in his payments to C.I.T.
Alabama Tractor Company was an equipment company engaged in the business of supplying, selling and repairing heavy equipment and was located at Saraland, Alabama, near Mobile. Its president and general manager was W.E. Small. Appellee knew Mr. Small and talked with him several times about moving the crane from Tennessee to Saraland and making the necessary repairs. Small paid the expenses of a man to go to Dyersburg to see the crane. After the man had inspected the crane, it was moved from Dyersburg to Saraland. Prior to moving the crane, Small had agreed with Dueitt that he would pay the C.I.T. Company, which claimed that the entire amount was due and refused to release the crane for the two months back payment. Small gave appellee $240 or $245 with which to pay the back payments due the finance company before he knew they had declared the whole balance due. Small then paid to the finance company the balance due of $2,094.
The only material issue on the facts, if there is an issue, is whether the crane was entrusted to Small or the Alabama Tractor Company. This difference, or conflict, is determined to be insufficient to submit the case to the jury.
Mr. Small had been in the business for several years and by his dealings and occupation was a merchant within the definition of merchant in the Uniform Commercial Code (UCC § 2-104). Appellee, when first called as an adverse witness, testified that he knew Mr. Small and considered him a good man. Appellee, Dueitt, had talked with Small but claimed that his dealings were with the Alabama Tractor Company. Mr. Small testified that the dealings were with him personally, and that Alabama Tractor Company had nothing to do with it. He submitted in evidence his personal check for $2,094.82 payable to C.I.T. and marked payment in full on this equipment. He also introduced a security agreement through which he borrowed money from the Merchants National Bank of Mobile on the equipment with which to redeem it. He submitted checks for $100, $274, $350, $200, $65, $248.50 and $130, payable to various and sundry persons for expenses and labor on the crane and in addition to the amount he gave Mr. Dueitt to give to the C.I.T. Company. These checks were all drawn on his personal account, and the note or obligation to the Merchants National Bank of Mobile was Small's personal obligation. In addition he introduced several sales slips (some to Alabama Tractor Company), which he testified were for parts to go on the crane and which amounted to several hundred dollars. These were paid by Small. Every conversation and every dealing that appellee had was with Small. All of the money expended was from Small's personal account  none was paid by the Alabama Tractor Company. Small testified that the Alabama Tractor Company had nothing to do with any of these dealings. There was some confusion as to whether Small and the appellee had had an agreement that after the crane was repaired it would be put to work and the profits would be divided until Small was repaid.
However, appellee did not secure any jobs for the equipment and there were no communications between him and Small, as far as the record shows, for probably two months after the equipment was left in Alabama. Small testified that they had discussed this proposition but no final agreement had been reached. After he *193 had held the equipment for about two months he sold to appellant for cash for $5,500. When Mr. Dueitt was later recalled and placed on the stand by his attorney, on cross-examination, the following questions and answers appear:
Q. When you were in Tennessee the tractor turned over, or something happened to it?
A. Yes.
Q. And then you asked Mr. Small to move it down to Alabama, is that correct?
A. Yes, sir.
Q. And did Mr. Small do that?
A. Yes, sir.
Q. When did he do that?
A. I don't know the specific date.
Q. What month?
A. I would say in May of '69, somewhere in there. I am not sure.
Q. Was when he moved it from Tennessee to Alabama?
A. Yes. It may have been before that. I am not sure on the date.
Q. And you had entrusted this dragline to Mr. Small from that time on, is that correct?
A. Until he sold it, I trusted it to him, yes sir.
Q. You gave it to him to keep for you?
A. I didn't give it to him.
Q. You said on direct examination that Mr. Small advanced you this money for C.I.T., this $2,094.00?
A. Yes, sir.
Q. Isn't it a fact that Mr. Small paid the money directly to C.I.T.?
A. Yes, sir.
Q. You never saw that check, it didn't come through your hands?
A. No, sir.
Q. But you know Mr. Small paid it off?
A. Yes, sir.
Q. You know Mr. Small gave you a check for two hundred and twenty-five dollars?
A. Yes, sir.
After having held the equipment for some time and having it upon the sales lot, it was finally sold to appellant. We find no evidence in the record that would put Mr. Litchfield upon notice or in anyway impugn his position as an innocent purchaser for value or "buyer in ordinary course of business" (UCC § 1-201(9). Sometime after the sale, Mr. Dueitt ascertained that the crane had been sold to appellant. Dueitt traced the crane and found it working on Dauphin Island off the Alabama coast. He went there during the night without knowledge of appellant and removed it to Hancock County, Mississippi. Thereafter appellant learned of its whereabouts. This replevin suit was instituted.
We are of the opinion that the evidence here is overwhelming and contradicted by no more than a scintilla, if that, that the equipment was entrusted to Mr. Small and that he is entitled to possession thereof. With this view of the case, it is unnecessary to pass upon the other questions raised or to pass upon the cross-appeal filed by appellee.
It is argued that Mr. Small, as president and manager of the company, was bound to be acting for the company. This could not affect appellant, even if true. If Small were violating any obligation to the company, that would be an issue between him and the company.
The jury, in the trial below in rendering a verdict for appellee, fixed the value of the equipment at $7,500. We are reversing *194 the case and entering judgment here in favor of appellant and valuing the crane at $7,500, the amount found by the jury.
Reversed and judgment here for appellant.
GILLESPIE, P.J., and RODGERS, BRADY and INZER, JJ., concur.