## 50726. SIMSON v. MOON.

MARSHALL, Judge.

This appeal involves a dispute as to the ownership of a wrecker truck which was sold twice by the same seller; first to the appellee, Moon, on June 22, 1973, and then to appellant, Simson, on November 13, 1973. The facts, according to the depositions and affidavits of the parties show that Moon bought the wrecker truck from Hollowell,

a wrecker truck dealer, on June 22, 1973, paying $8,840 cash and receiving in exchange an invoice and a signed manufacturer's certificate of origin. Moon did not see the wrecker truck or know where it was but understood from Hollowell that the truck was to have the wrecker equipment mounted in Chattanooga, Tennessee, and that delivery would be made to Moon thereafter.

On November 13, 1973, Hollowell induced Simson to buy the same truck. Without knowledge of the prior sale to Moon, Simson secured financing and paid $8,700 to Hollowell for the truck. Again the truck was unseen by the purchaser, but Simson was told by Hollowell that it was in Chattanooga having wrecker equipment installed. On November 16, an agent of Simson's went to Chattanooga and accepted delivery of the truck. In early December, Hollowell sent to Simson a form MV-2 (Georgia application for tag and title) which was signed on the back by Hollowell indicating transfer of the vehicle from Hollowell to Simson and warranting the title of same.

On January 25, 1974, Moon discovered that Simson had possession of the wrecker truck, at which time Moon applied for and obtained a Georgia Certificate of Title. Hollowell apparently has absconded with the proceeds from both sales and was not named as a party to this lawsuit.

Moon brought suit to recover the vehicle from Simson, who admitted possession but denied Moon's claim of ownership. Both parties filed motions for summary judgment with supporting affidavits and depositions, and the trial court granted Moon's motion, denied Simson's, set supersedeas bond of $9,000, and certified this judgment for immediate review. *Held:*

The issue is whether or not there was an "entrusting" of the truck under UCC § 2-403 (2) and (3) (Code Ann. § 109A-2—403 (2) and (3)), so as to allow Hollowell to pass good title to Simson.

The rule in Georgia under its former Sales Act (Code Ann. § 96-111) had been, "The seller can convey no greater title than he has himself. There is no 'market overt' in Georgia." *Arnold v. Conner,* 100 Ga. App. 503 (1) (111 SE2d 638); 77 CJS 1099, Sales, § 291. While the spirit

of this rule has been carried forward in Article 2 of the Uniform Commercial Code (UCC § 2-403 (1)), a prominent exception to it is found in the "entrusting" provision of that Code section, UCC § 2-403 (2) and (3) (Code Ann. § 109A-2—403 (2) and (3)). It provides:

"(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

"(3) 'Entrusting' includes any delivery or any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

The classic situation to which this Code section applies is found in *Rockwin Corp. v. Kincaid,* 124 Ga. App. 570 (184 SE2d 509). There the manufacturer of a mobile home (plaintiff) delivered a new mobile home to a dealer with an invoice and instructions that the dealer was not to use the invoice to transfer title, but that the title could be transferred only through the manufacturer's certificate of origin, which it did not send. The dealer sold the mobile home to the defendant for cash without the certificate of origin. Apparently the dealer absconded with the cash or for some other reason could not pay the manufacturer. The manufacturer sued the defendant purchaser contending that the purchaser did not have a Georgia certificate of title as required under Code Ann. § 68-415, and therefore acquired no "right, title or interest in and to" the mobile home.

This court held that because the title requirements applied only to the purchase of a vehicle which had been previously titled in Georgia, the absence of a certificate of title did not affect the purchaser's claim of ownership. Since the mobile home had been entrusted to the dealer and the dealer was "a merchant who deals in goods of that kind," the dealer could convey good title to the purchaser under UCC § 2-403 (2) and (3). The defendant purchaser was found to be a "buyer in ordinary course of business" and his claim of ownership was good against the original owner, manufacturer.

Appellant, Simson, contends that the *Rockwin* case controls the case sub judice. We agree. The obvious differences in the two cases we believe are differences without distinctions. Unlike the manufacturer in *Rockwin,* Moon did not *deliver* the truck to the dealer with instructions limiting latter's authority to sell, but instead left it either with the dealer or the dealer's apparent agent after paying for it without taking possession. His conduct, in effect, amounted to *"any* acquiescence in retention of possession" under the Code provision. Moon's acquiescence in leaving the truck with the dealer amounts to an estoppel, which is the underlying principle of section 2-403 (2) and (3). Cf. DePaulo v. Williams Chevrolet-Cadillac, Inc. (Pa.), 3 UCC Rptg. Serv. 600. Even though the dealer here did not have actual possession of the truck at the time of the sale to Simson, as did the dealer in the *Rockwin* case, the dealer nevertheless manifested his ability to control and dispose of the truck as if it were in his inventory. Simson did not have actual knowledge of the prior sale and was not put on notice of any unusual circumstances such as would deny him of the status of a "buyer in ordinary course of business."[1] Simson did all he could to protect himself by taking possession of the truck within three days after purchasing it and by extracting from the dealer a transfer of registration and warranty of title. Moon has not shown such diligence.

The general thrust of the cases involving "entrusting" of goods to a dealer is aimed at the protection of the purchaser, where the latter acts in "good faith" and the owner takes the risk by placing or leaving his chattel

---

[1]A "buyer in ordinary course of business" is defined by UCC § 1-201 (9) (Code Ann. § 109A-1—201 (9)) as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind." See Medico Leasing Co. v Smith (Okla.), 457 P2d 548; Couch v. Cockroft (Tenn.), 490 SW2d 713.

with a merchant of his own choosing who could convert or otherwise misdeal it. See Godfrey v. Gilsdorf, 86 Nev. 714 (476 P2d 3); Palmer v. Booth & Cowley, (N. Y.) 7 UCC Rptg. Serv. 182; Linwood Harvestore v. Cannon, 427 Pa. 434 (235 A2d 377); Couch v. Cockroft, (Tenn.) 490 SW2d 713; Humphrey Cadillac & Oldsmobile Co. v. Sinard, 85 Ill. App. 2d 64 (229 NE2d 365); Sherrock v. Commercial Credit Corp., (Del.) 290 A2d 648; Apeco Co. v. Bishop Mobile Homes, (Tex.) 506 SW2d 711, 3A Bender's UCC Service, Sales and Bulk Transfers § 10.06 [2]. The Georgia courts have similarly protected the good faith purchaser in the "entrusting" situations, both under the UCC (Code Ann. § 109A-2—403 (2) and (3)) (see *Rockwin Corp. v. Kincaid,* supra; *Christopher v. McGehee,* 124 Ga. App. 310 (183 SE2d 624); *Charles S. Martin Dist. Co. v. Banks,* 111 Ga. App. 538 (142 SE2d 309)) and under the old sales law (see *Peoples Loan &c. Corp. v. McBurnette,* 100 Ga. App. 4 (2, 3) (110 SE2d 32); *Dealers Discount Corp. v. Trammell,* 98 Ga. App. 748 (106 SE2d 850); *Wolfe v. Smith,* 80 Ga. App. 136 (55 SE2d 675); *Capital Auto. Co. v. Ward,* 54 Ga. App. 873 (189 SE 713); *Pilcher v. Enterprise Mfg. Co.,* 36 Ga. App. 760 (138 SE 272). These latter pre-UCC cases reach the same result based in varying degrees on "estoppel" or "apparent authority" or both. The protection afforded the purchaser "is merely a special application of the broad equitable principle that where one of two innocent persons must suffer loss by reasons of the fraud or deceit of another, the loss should rightly fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud." DePaulo v. Williams Chevrolet-Cadillac, Inc., supra, p. 603. See also, *Blount v. Bainbridge,* 79 Ga. App. 99, 103 (53 SE2d 122); *Morris v. Courts,* 59 Ga. App. 666, 672 (1 SE2d 687).

Summary judgment entered for appellee, Moon, is reversed with direction to enter judgment in favor of appellant, Simson.

*Judgment reversed with direction. Pannell, P. J., Quillian, Clark, Stolz and Webb, JJ., concur. Bell, C. J., Deen, P. J., and Evans, J., dissent.*

ARGUED JUNE 2, 1975 — DECIDED NOVEMBER 26, 1975 — REHEARING DENIED DECEMBER 16, 1975 —

*Hansell, Post, Brandon & Dorsey, Jefferson D. Kirby, III, Paul Oliver,* for appellant.
*Gaines C. Granade,* for appellee.

BELL, Chief Judge, dissenting.

The facts in this case are distinguishable from *Rockwin Corp. v. Kincaid,* 124 Ga. App. 570 (184 SE2d 509). Here, the third party dealer, Hollowell, passed his title to the plaintiff-purchaser. At the time of the sale, the dealer assigned the manufacturer's certificate of origin, giving the plaintiff title to the vehicle. An examination of the manufacturer's certificate of title shows that the dealer, Hollowell, acquired the title from still another dealer in Chattanooga, Tennessee, on June 21, 1973, one day prior to the assignment to plaintiff. From this evidence, the only inference that can be drawn is that the truck was always physically located in Chattanooga. Thus, Hollowell at best had only constructive possession of the vehicle at the time of sale to plaintiff in Decatur, Georgia, or at any time prior to this sale. Thereafter, Hollowell had neither actual nor constructive possession and no right to possession. As a part of the sales price of the vehicle the invoice reflected that a part of the purchase price included a "Holmes 500 wrecker." It is undisputed that Ernest Holmes, Inc. of Chattanooga, Tennessee, acquired the actual possession of the wrecker for the purpose of mounting the wrecker equipment. The evidence is also undisputed that the Holmes firm had possession of the truck at the time of the purported second sale of the vehicle to defendant. At that time Hollowell had no possession whatsoever and no title to convey. Therefore, he conveyed nothing to the second purchaser-defendant. There is absolutely no evidence from which it can be inferred that Ernest Holmes, Inc. (Chattanooga) was the servant or agent of Hollowell. The only inference that can be drawn is that Holmes, Inc. was an independent contractor. Actual possession by Holmes, Inc. under the facts does not grant any type of possession to Hollowell. Thus there was no entrusting within the meaning of UCC § 2-403 (2) (3) (Code § 109A-2—403 (2)

(3)). Further, the plaintiff obtained a certificate of title from the State of Georgia to this vehicle. True, it was obtained after the plaintiff had received knowledge that the vehicle had been resold to the second purchaser-defendant. The fact that plaintiff may have taken an unreasonable time to record his title and was not diligent in obtaining possession or delivery of the wrecker from Ernest Holmes, Inc. has no effect whatsoever on the legal status of the property. The majority opinion attempts to apply the doctrine of laches because of plaintiff's lack of diligence. However, this doctrine has no application in this type of case. An owner of personalty can allow the third person to retain possession of property which he owns for as long as he wants. A Georgia certificate of title is prima facie evidence of the facts appearing on it. Code Ann. § 68-411a. Even though this case is appealed by the defendant-appellant on the grant and the denial of motion for summary judgment, the defendant has not contradicted nor shown a factual issue with respect to plaintiff's title. Obviously, not being able to disprove the plaintiff's title, the defendant could not prove his own.

The entrusting provision of the Uniform Commercial Code was never intended to apply to a case with a factual background such as this. It applies generally to situations such as those in *Rockwin* and in *Christopher v. McGehee,* 124 Ga. App. 310 (183 SE2d 624). In both those cases a dealer was given possession of vehicles by a third person with limitations on the dealer's authority to sell. If the majority view prevails it will expose any person to the loss of his property in two common situations which occur by the hundreds every day: (1) Where one gives possession of his property to a dealer (such as an automobile dealer) for repairs: (2) or allows retention of possession by a dealer who has passed title for what is commonly called "dealer preparation." This is not the intention of this part of the Uniform Commercial Code. The trial court's grant of the first purchaser's (the plaintiff's) motion for summary judgment should be affirmed.

EVANS, Judge, dissenting.
Hollowell, a dealer, owned a wrecker truck located in

Chattanooga. He sold it twice to separate citizens of Georgia.

The first sale was to Moon, to whom he gave a certificate of origin from the manufacturer, and which certificate Moon used to obtain a certificate of title in Georgia. See Code Ann. §§ 68-408a, 68-409a (b). But Moon did not ever have actual possession of the vehicle, his explanation being that he left it with Hollowell so certain extras might be placed thereon.

Then Hollowell sold the same wrecker truck to Simson, who took possession and obtained a tag registration in Georgia. Just how he obtained a tag registration is hard to understand as he did not have a certificate of title, and without which he was not entitled to obtain a tag registration, although the Revenue Commissioner may accept a sworn affidavit from the applicant for tag registration as evidence of issuance or application for the certificate. See Code Ann. § 68-406a (c).

So the question for this court is as to how stand the two parties, Moon and Simson, with reference to ownership of the wrecker?

While it is true that Simson was diligent in one respect in that he quickly moved into possession (and the old saying is that possession is nine points in the law, whatever that means), and he also obtained a tag registration, in Georgia, where he lived and to which state he moved the car.

But he had no legal right to obtain a tag registration because he had no certificate of title which had been issued to Hollowell. Hence, we may disregard his tag registration, except to comment upon the circumstances.

A circumstance that should be considered is that when Simson went to claim possession of the vehicle, extra equipment was being added thereto. At whose instance is extra equipment usually added — the dealer or the purchaser? The record does not show that Simson — who must have known all about such things — made inquiry about why and at whose instance the extra equipment was being added. He may have learned the truth of the situation then and there, but the record is silent. He should have made inquiry, whether he did or

not. "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties. (74 Ga. 120; 76 Ga. 823.)" Code § 37-116.

Simson knew he had no legal right to obtain a tag and registration of title in Georgia because he did not have a certificate of origin as is required by Code § 68-409a, which appears to be necessary first for certificate before such tax and legal title registration may be accomplished in Georgia. These circumstances strongly suggest that Simson knew he was not buying the car from one who had the lawful right to sell it.

In view of the foregoing, despite Simson's actual possession (which he took while Moon was having the seller or someone place extra equipment on the car in Chattanooga), the evidence indicates that Moon had the superior title and right of possession; that Moon's motion for summary judgment should have been granted and Simson's motion for summary judgment should have been denied.

I therefore vote to affirm the judgment of the trial court granting summary judgment to Moon and denying summary judgment to Simson. I dissent from the majority opinion and judgment of reversal.