A90A0958. PERIMETER FORD, INC. v. EDWARDS et al.
(399 SE2d 520)

SOGNIER, Judge.

Perimeter Ford, Inc., brought suit in trover against, inter alia, Gary and Colleen Edwards and First National Bank of Atlanta (FNB) to recover possession of a 1988 Ford Escort and its hire. The defendants moved for summary judgment on the grounds that title to the vehicle had passed to the Edwardses either pursuant to OCGA § 11-2-403 (2), (3) or under the provisions governing transfers of motor vehicle titles, and Perimeter Ford filed a cross motion for partial summary judgment. The trial court granted the defendants' motions and denied Perimeter Ford's motion, and Perimeter Ford appeals.

In the summer of 1988, appellee Gary Edwards, who was planning to buy a new car, learned from a business acquaintance that United Car & Truck Leasing, Inc. (hereinafter "United") was in the business of selling cars at a lower markup than charged by franchise dealers. He established contact with Jay Kafka, a United sales and leasing agent, and indicated he wished to purchase a Ford Escort. Kafka contacted Barry Blakely, a fleet sales representative of appellant with whom he often did business, and arranged to obtain the model specified by Edwards. When Kafka arrived at appellant's place of business on August 2, Blakely was not in, but another of appellant's employees completed a purchase order and turned over to Kafka the keys, owner's manual, and the manufacturer's certificate of origin ("MCO") for a 1988 Ford Escort, although the MCO was not assigned to United. Kafka then drove the car to United's place of business, an office in a suburban office complex, and replaced appellant's dealer tag with a United tag. He then made arrangements with appellee FNB, which often financed United's sales and leases, to finance the Edwardses' purchase. Two days later, the Edwardses arrived at

United's office, where they observed the Escort and several other cars with United tags parked in the parking lot. They executed the sales and financing agreements, and Kafka stated he would obtain their title and tag. When they failed to receive these items, the Edwardses authorized FNB to obtain a title and tag for them, which FNB did by obtaining a title bond pursuant to the procedure set forth in OCGA § 40-3-28.

Kafka testified that during his four years of employment with United, United was engaged in the business of selling and leasing cars, with sales comprising 30 percent of its transactions. The record reveals that for at least ten of these transactions, Kafka procured vehicles from appellant on credit, following the same procedure used to obtain the car at issue, and paid appellant with the proceeds from the sale of either the vehicle or the lease. In an affidavit, Blakely confirmed that he regularly obtained vehicles for United pursuant to its specifications, that appellant extended credit to United, and that he approved the sale of the Ford Escort on August 2, 1988, although he was not present when Kafka picked up the car and thus did not sign the purchase order. It is undisputed that United was not registered as a new car dealer under OCGA § 40-2-39 (a) (1) (formerly OCGA § 40-2-36.1 (a) (1)), and that United did not pay appellant for the car at issue.

OCGA § 11-2-403 provides in pertinent part: "(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business. (3) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." In the instant case, if United was a "merchant" as defined in OCGA § 11-2-104 (1) to whom appellant "entrusted" possession of the car within the meaning of OCGA § 11-2-403 (3), then United had the authority to transfer appellant's ownership interest in the car. Therefore, if the Edwardses were "[b]uyer[s] in ordinary course of business" as defined in OCGA § 11-1-201 (9), they properly were determined to be the owners of the vehicle, see *Simson v. Moon*, 137 Ga. App. 82 (222 SE2d 873) (1975); *Rockwin Corp. v. Kincaid*, 124 Ga. App. 570, 572-573 (184 SE2d 509) (1971), and appellant's suit in trover against appellees must fail because appellant had no title or right to possession as against the Edwardses. See *McDaniel v. White*, 140 Ga. App. 118, 120 (4) (230 SE2d 500) (1976).

(a) A "merchant" is one "who deals in goods of the kind . . . involved in the transaction." OCGA § 11-2-104 (1). The undisputed

evidence established that at the time of the transaction at issue, United was engaged in the business of selling and leasing cars, and thus was a merchant dealing in vehicles. See *Christopher v. McGehee*, 124 Ga. App. 310, 311 (183 SE2d 624) (1971).

Appellant maintains the "goods of the kind" in the transaction were new vehicles, and that United cannot be considered to be a merchant dealing in the sale of new cars because it was not registered as a new car dealer under OCGA § 40-2-39 (a) (1). We do not agree. The provisions governing motor vehicle registration and licensing are revenue measures, the violation of which subjects dealers to criminal penalties, see OCGA § 40-2-39 (b), (d); *Cambron v. Cogburn*, 116 Ga. App. 373, 375 (2) (157 SE2d 534) (1967), but noncompliance therewith does not void a commercial transaction that is otherwise valid under the Commercial Code. Cf. *Cambron*, supra at 375-376 (2) (automobile dealer's failure to comply with dealer tag registration statute does not make dealer liable in tort for acts of one whom dealer improperly allowed to drive vehicle with dealer tag). The definition of "merchant" does not require compliance with applicable laws as a prerequisite. Even if United's failure to register as a new car dealer subjected it to possible liability under OCGA § 40-2-39 (c), (d), its noncompliance with the revenue collection scheme of the motor vehicles laws does not affect the applicability of OCGA § 11-2-403 to the sale of the Ford Escort to the Edwardses. Further, even assuming, without deciding, that United acquired the vehicle from appellant under false pretenses by misrepresenting itself as a licensed new car dealer, OCGA § 11-2-403 (3) provides that an entrustment occurs "regardless of whether the procurement of the entrusting . . . ha[s] been such as to be larcenous under the criminal law."

(b) We next find that appellant "entrusted" possession of the Ford Escort to United within the meaning of OCGA § 11-2-403 (2), (3) because Blakely, appellant's undisputed agent, authorized delivery of the car to United's agent, Kafka, with the knowledge that the vehicle was to be sold or leased in the course of United's business. *Simson*, supra at 85; compare *Sylvester &c. Co. v. Farmers Bank*, 153 Ga. App. 614, 615 (1) (266 SE2d 293) (1980). Appellant's contentions that it did not entrust the car to United to be sold as a *new* car and that provisions in the purchase order precluded the subsequent sale to the Edwardses are without merit, as subsection (3) specifically includes *any* delivery and acquiescence in possession, *Simson*, supra, and encompasses possession regardless of any condition or limitation expressed between the parties. *Christopher*, supra at 311. We need not address appellant's alternative argument that United acted as an agent for the Edwardses, not as an entrustee of appellant, because appellant failed to present that argument to the trial court. *McCall v. MARTA*, 192 Ga. App. 105 (1) (384 SE2d 215) (1989). Accordingly,

since the evidence shows that appellant entrusted the car to United, which was a merchant dealing in such goods, under OCGA § 11-2-403 (2) United was empowered to transfer appellant's ownership interest in the car to a buyer in ordinary course of business.

(c) OCGA § 11-1-201 (9) defines a buyer in ordinary course of business as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind." The record reveals that the Edwardses believed United was in the business of obtaining new cars and selling them without the commission that would be charged by a franchise dealer; that they observed several vehicles with United's dealer tags in the parking lot at United's office; that United was indeed "in the business of selling" new cars, whether properly licensed or not; that the documents memorializing the sale did not reveal appellant's ownership; and that the Edwardses had no knowledge of appellant's claim or interest until they received a demand letter from appellant's attorney shortly before suit was filed. See *Christopher*, supra at 311-312 (1). Contrary to appellant's assertion, we find no evidence to suggest that the circumstances were so unusual as to put the Edwardses on notice to inquire about any prior interests in the car. See *Simson*, supra; compare *Sylvester*, supra at 615 (1) (dealer is charged with stricter standard of conduct and thus has duty to inquire where individual consumer would not).

Consequently, we hold that the trial court was authorized to find that appellant entrusted the car at issue to United, which then sold the vehicle to the Edwardses, who as buyers in the ordinary course of business received all ownership rights of appellant. The Edwardses, having acted in good faith, are entitled to the protection accorded innocent purchasers by OCGA § 11-2-403, see *Simson*, supra at 85-86, and appellant, having negligently entrusted the car and having failed to perfect a security interest in the vehicle, must bear the loss. Id.

*Judgment affirmed. McMurray, P. J., concurs. Carley, C. J., concurs in Divisions (a) and (c) and in the judgment.*

DECIDED NOVEMBER 14, 1990 —
REHEARING DENIED NOVEMBER 28, 1990.

*Fletcher Thompson*, for appellant.
*Meals, Kirwan, Goger, Winter & Parks, John J. Goger, Harlan S. Miller III*, for appellees.