A92A1236. PEREZ-MEDINA v. FIRST TEAM AUCTION, INC.
(426 SE2d 397)

ANDREWS, Judge.

Perez-Medina brought this trover action against First Team Auction alleging that First Team Auction refused to relinquish possession of a tractor owned by him. Perez-Medina appeals from the trial court's order granting summary judgment in favor of First Team Auction, and denying his motion for summary judgment.

Construed in favor of appellant as the party opposing summary judgment, the evidence reflects that Perez-Medina bought the tractor at an auction for $66,500. At the auction, appellant met Julio Lara, who was bidding on the same tractor. At a second auction the same day, appellant purchased certain equipment for the tractor. He met Lara again at the second auction, and the two agreed that Lara would install the equipment on the tractor. With Perez-Medina's knowledge and consent, Lara took possession of the tractor, and moved it to his place of business for this purpose. About four months later, Perez-Medina went to Lara's place of business, and paid him $10,000 to install the equipment. Appellant testified that the business where the tractor was located appeared to him to be a repair shop rather than a business dealing in heavy equipment. Other undisputed evidence showed that Lara operated a business in which he regularly bought and sold heavy equipment like the tractor at issue at auctions conducted by First Team Auction and others, and in other business transactions. Subsequently, without appellant's knowledge or consent, Lara represented to First Team Auction that he was the owner of the tractor free and clear of any liens, and put the tractor up for sale at an auction conducted by First Team Auction. After the auction failed to produce an adequate bid for the tractor, Lara negotiated a sale of

the tractor to First Team Auction for about $54,000. The tractor was sold without appellant's knowledge or consent, and appellant received no part of the sales proceeds. The tractor was thereafter sold by First Team Auction to a tractor dealer, who sold it to a consumer. When the sales were made, neither First Team Auction, nor the subsequent purchasers had any knowledge of appellant's interest in the tractor. After Lara's conversion of the tractor was discovered, the subsequent purchasers after First Team Auction returned the purchase price and tractor, culminating in First Team Auction's return of the purchase price, and acceptance of the tractor back from its purchaser.

OCGA § 11-2-403 provides that: "(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business. (3) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescense and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." Thus, the issue becomes whether Lara was a "merchant" under OCGA § 11-2-104 (1) to whom appellant "entrusted" the tractor within the meaning of OCGA § 11-2-403 (2), (3). If so, then Lara was empowered to transfer appellant's ownership interest in the tractor to a " 'buyer in ordinary course of business' " as defined in OCGA § 11-1-201 (9). Accordingly, if First Team Auction retained the status of a buyer in ordinary course of business, appellant cannot prevail in the present trover action because he would lack title or right of possession to the tractor as against First Team Auction. *Perimeter Ford v. Edwards*, 197 Ga. App. 747, 748 (399 SE2d 520) (1990).

1. In his first enumeration of error, appellant contends the trial court erred by determining that Lara was a "merchant." A " '[m]erchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction. . . ." OCGA § 11-2-104. The evidence is undisputed that Lara was known by First Team Auction and others as a regular dealer buying and selling heavy equipment. Moreover, appellant met Lara at an auction, where Lara was bidding on the tractor at issue. After meeting Lara again at another such auction the same day, appellant hired him to install equipment on the tractor, and authorized him to take immediate possession of the tractor for this purpose. Appellant contends that Lara is not a "merchant" because he did not know he was a dealer in heavy equipment. This contention is based on his observation of Lara's place of business, which he visited about four months after placing the tractor in Lara's possession. Appellant concluded

that the business appeared to him to be a place to make repairs, rather than a business dealing in heavy equipment.

The primary rationale behind the entrusting provisions of OCGA § 11-2-403 is aimed at protecting the buyer who purchases the entrusted goods in the ordinary course of business. *Simson v. Moon*, 137 Ga. App. 82, 85 (222 SE2d 873) (1975). Thus, "the owner takes the risk by placing or leaving his chattel with a merchant of his own choosing who could convert or otherwise misdeal it. . . . The protection afforded the purchaser is merely a special application of the broad equitable principle that where one of two innocent persons must suffer loss by reasons of the fraud or deceit of another, the loss should rightly fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud." (Citations and punctuation omitted.) Id. at 85-86. Nevertheless, given that the entrusting provisions of the statute operate only where the goods have been placed with a "merchant," it is reasonable to conclude that the statute requires, from an objective viewpoint, that the entruster know, or in the exercise of reasonable diligence should know, that he placed the goods with one who might reasonably appear to third persons to be a dealer in the type of goods in question. See Anderson, Uniform Commercial Code, 3d ed., Sales, § 2-403:34. It follows that the entrustment provisions of OCGA § 11-2-403 do not operate in the context of a casual sale, where the entruster places the goods in the possession of one who exhibits no objective indicia of being a dealer in the kind of goods in question.

Here, the record supports the trial court's conclusion, as a matter of law, that Lara was a merchant dealing in the kind of goods at issue. Appellant met Lara at an auction at which Lara was bidding on the tractor at issue. Appellant later met Lara at a similar auction, agreed for Lara to install equipment on the tractor, and placed the tractor in Lara's possession. When appellant visited Lara four months later, he contends the place where Lara kept the tractor impressed him as a repair shop. Other undisputed testimony from First Team Auction and others engaged in the buying and selling of heavy equipment, shows that Lara held himself out as a merchant in the business of buying and selling the kind of goods at issue, and regularly bought and sold such goods at auctions and in other business transactions. The evidence established, as a matter of law, that First Team Auction and other third parties knew Lara was a dealer in the type of goods in question, and that appellant knew, or should have known, that Lara might reasonably appear to third parties to be such a dealer.

2. Secondly, appellant argues that he did not "entrust" the tractor to Lara. The trial court also properly concluded that appellant "entrusted" the tractor to Lara as defined by OCGA § 11-2-403 (2), (3). "[S]ubsection (3) [of the statute] specially includes *any* delivery

and acquiescence in possession, and encompasses possession regardless of any condition or limitation expressed between the parties." (Emphasis in original. Citations omitted.) *Perimeter Ford*, supra at 749. Under the statute, the tractor was "entrusted" despite the fact that it was placed in Lara's possession only for the purpose of installing equipment for appellant rather than for sale. See *Simson*, supra (after entruster placed truck in possession of dealer for purpose of repairs, dealer's unauthorized sale of truck to a buyer in the ordinary course of business was effective to convey the entruster's ownership interest); *Christopher v. McGehee*, 124 Ga. App. 310, 311 (183 SE2d 624) (1971). Under the statute, "[appellant's] acquiescence in leaving the [tractor] with [Lara] amounts to an estoppel, which is the underlying principle of [OCGA § 11-2-403 (2) and (3)]." *Simson*, supra at 85; see Anderson, Uniform Commercial Code, 3d ed., Sales, §§ 2-403:42; 2-403:43 (under the entrustment provisions of OCGA § 11-2-403, it is immaterial why possession of the goods was left with the merchant-seller, or that sale of the goods was not authorized by the entruster); compare *Sylvester Motor &c. Co. v. Farmer's Bank of Pelham*, 153 Ga. App. 614, 615 (266 SE2d 293) (1980) (although noting the goods were not "entrusted" to the dealer for sale, the holding appears to ultimately rest on the conclusion that the purchaser from the dealer was not a buyer in the ordinary course of business). Accordingly, Lara was empowered to transfer appellant's ownership interest to a buyer in the ordinary course of business. *Classic Cadillac v. World Omni Leasing*, 199 Ga. App. 115, 117 (404 SE2d 452) (1991); *Perimeter Ford*, supra at 750.

3. In his third enumeration, appellant contends the trial court erred in ruling that First Team Auction was a buyer in the ordinary course of business. A "buyer in ordinary course of business" is defined by OCGA § 11-1-201 (9) as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind. . . ." The record shows that First Team Auction, which bought, sold and conducted an auction business in goods of this kind, knew Lara was in the business of buying and selling heavy equipment, and had dealt with Lara on a regular basis. There is no evidence that First Team Auction, as a dealer itself, failed to reasonably inquire into Lara's interest in the tractor, nor do we find any peculiar circumstances about the sale sufficient to raise a question of fact as to whether there was a good faith purchase. See *Perimeter Ford*, supra at 750. Prior to First Team Auction's purchase of the tractor, Lara executed a standard pre-auction document declaring that he had ownership interest in the tractor and could sell it free of all liens. There is no requirement that the sale of the tractor be evidenced by a

bill of sale or other proof of ownership. See *Brown v. Allen*, 203 Ga. App. 894, 895 (418 SE2d 153) (1992). As a buyer in the ordinary course of business, First Team Auction received from Lara all of appellant's ownership interest in the tractor under OCGA § 11-2-403. *Perimeter Ford*, supra. On the present facts, the risk of the loss caused by Lara's conversion, as between appellant and First Team Auction, is borne by appellant. See *Benton v. Duvall Livestock Marketing*, 201 Ga. App. 430 (411 SE2d 307) (1991). Consequently, there was no error in the trial court's grant of summary judgment in favor of First Team Auction.

4. Finally, appellant contends the trial court erred in denying his motion for summary judgment because, even if First Team Auction was a buyer in the ordinary course of business when it originally purchased from Lara, it could not occupy that status when, after learning of Lara's conversion, it repurchased the tractor from its subsequent good faith purchaser with knowledge of appellant's interests. By returning the purchase price and reobtaining the tractor, First Team Auction accomplished a rescission of the sale rather than a repurchase, and thus continued to occupy the status of a good faith buyer in the ordinary course of business. See *Charles Evans BMW v. Williams*, 196 Ga. App. 230, 233 (395 SE2d 650) (1990). The trial court properly denied appellant's motion for summary judgment.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED DECEMBER 1, 1992 — RECONSIDERATION DENIED DECEMBER 15, 1992

*Dorough & Sizemore, Kermit S. Dorough, Jr.*, for appellant.
*Ben F. Easterlin IV*, for appellee.