## In re FRED MADORE CHEVROLET–PONTIAC–OLDSMOBILE, INC., Debtor.

## BANK OF NEW HAMPSHIRE, Plaintiff,

## v.

## Jeffrey SCHREIBER, Trustee, Fred Madore Chevrolet–Pontiac–Oldsmobile, Inc., Shaker Valley Auto & Tire, Inc., Mascoma Savings Bank and Winston P. Titus, Defendants.

Bankruptcy No. 97–112019–MWV.

Adversary No. 97–01118–MWV.

United States Bankruptcy Court,
D. New Hampshire.

March 24, 1998.

Geraldine Karonis, Asst. U.S. Trustee, Manchester, NH, for J. Christopher Marshall.

J. Michael Deasy, Deasy & Dwyer, P.A., Nashua, NH, for Shaker Valley Tire & Auto, Inc.

Randall L. Pratt, Schreiber and Associates, Danvers, MA, for Jeffrey Schreiber.

Paul C. Semple, McSwiney, Semple, Bowers & Wise, P.C., Concord, NH, for Bank of New Hampshire.

Robert Titus, Norwich, VT, for Winston Titus.

## MEMORANDUM OPINION AND ORDER

MARK W. VAUGHN, Bankruptcy Judge.

The Court has before it a motion for partial summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, filed by one of the Respondents, Winston P. Titus ("Titus"). Titus moves this Court to grant partial summary judgment that he owns title to a certain Chevrolet C1500 pick-up truck that he bought from Fred Madore Chevrolet–Pontiac–Oldsmobile, Inc. ("Madore"). However, Shaker Valley Auto & Tire, Inc. ("Shaker") claims title also, contending that Madore never had the right to sell Titus the vehicle: Shaker first bought the pick-up at an auction and gave it to Madore to service, not sell. Shaker therefore contends that since it never transferred the truck's title to Madore, Titus cannot claim it. The truck, upon which many parties have claimed ownership and liens, is the subject of this adversary proceeding, the original complaint of which was brought by the Bank of New Hampshire pursuant to sections 541(a) and (d) to determine the property interest in the truck.

Titus moves that he succeeds to all rights of Shaker in and to the C1500 Chevrolet truck pursuant to section 382–A:2–403(2) of the New Hampshire Revised Statutes Annotated. Titus also requests that this Court order Shaker to execute any necessary documents effecting a title transfer from Shaker to Titus. For the reasons set out below, the Court grants Titus' partial summary judgment motion.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. §§ 157(b)(2)(B) and (O).

## DISCUSSION

Titus' partial summary judgment motion seeks a determination that there are no material facts in dispute, and, as a matter of law, he is entitled to judgment entered in his favor.

Pursuant to Federal Rule of Civil Procedure 56(c), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c) (1997). The Court may not resolve issues of fact, but may only decide if they exist. *United States v. Articles of Device*, 527 F.2d 1008, 1011 (6th Cir.1976); *Aetna Ins. Co. v. Cooper Wells & Co.*, 234 F.2d 342, 345 (6th Cir.1956). "Genuine," in the context of Rule 56(c), means that "the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party . . . ." *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 36 (1st Cir.1993) (internal quotation marks and citations omitted). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993). Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). Thus, in order to grant the Defendant's summary judgment motion, this Court "must examine all facts established by the record before it and conclude that, under the applicable substantive law, no reasonable factfinder could possibly return a verdict in favor of the nonmoving party." *Boyd v. Dock's Corner Assocs.*, 135 B.R. 46, 53 (Bankr. W.D.Mich.1991).

Certain facts are not in dispute. On March 10, 1997, Shaker purchased a Chevrolet C1500 pick-up truck ("Truck") from North Shore Auto Auction in Ipswich, Massachusetts. LaCroix Aff. On or about March 10–12, 1997, Shaker dropped off the Truck at Madore for servicing. LaCroix Aff. In fact, Shaker had a history of doing business with Madore: for a period of five or six years, Shaker purchased, sold, and serviced motor vehicles with the car dealership. LaCroix Aff. On March 28, 1997, Madore sold the Truck to Titus. Titus Aff. Titus' affidavit states that when he went to Madore to purchase a vehicle, the Truck was located in the sales area of the Madore dealership with eighteen to twenty other automobiles and trucks, all with sale and price signs. Titus Aff. In consideration for $11,475.00, Madore assigned a retail installment and security agreement between Madore and Titus to Bank of New Hampshire ("BNH"). Madore then prepared a title application, which it apparently failed to forward to the New Hampshire Department of Motor Vehicles.

Shaker now demands that the Truck be returned, insisting that it still retains title [1] and that it never authorized Madore to sell the Truck to Titus, or anyone for that matter. According to Titus' affidavit, in May 1997, a representative from Shaker visited Titus at a construction site where he was

---

1. At the auction, Shaker received a Certificate of Title from the State of Maine endorsed by North Shore Auto Auction, which it still possesses. Shaker has not executed any document to transfer title to Madore or Titus. LaCroix Aff. In addition, at a previous hearing, Shaker stated that it granted a security interest to Mascoma Savings Bank ("Mascoma"). BNH moved to add Mascoma as a Respondent, which this Court granted on November 12, 1997, and BNH filed its amended complaint adding Mascoma as a defendant on December 10, 1997. However, to date, Mascoma has not filed an appearance or any responsive pleadings in this adversary proceeding.

working, seeking possession of the Truck. Titus Aff.

On April 7, 1997, Madore filed a petition in bankruptcy under chapter 11. Madore's chapter 11 case was converted to chapter 7 on June 13, 1997. On June 19, 1997, the New Hampshire Bureau of Titles notified Titus that no certificate of title had been filed on his behalf, although he executed a title application and paid a fee to Madore on March 28, 1997, when he bought the Truck from the dealership.

On September 15, 1997, BNH filed the complaint to this adversary proceeding to determine the property interest in the Truck. Titus, who has continued making payments on the Truck to BNH, filed his motion for partial summary judgment on January 27, 1998, to which Shaker objected on February 26, 1998.

Taking the most favorable view to the non-moving party, this issue may be characterized as two innocent parties who were wronged, allegedly, by a third. Shaker contends that it dropped off the vehicle only for servicing. Titus contends that he bought the vehicle unaware that it may not have been Madore's to sell. As such, both Titus and Shaker claim title to the Truck. The applicable statute under which Titus moves, New Hampshire RSA § 382–A:2–403 entitled "Power to Transfer; Good Faith Purchase of Goods; 'Entrusting,' states that:

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

N.H.Rev.Stat.Ann. § 382–A:2–403(2) and (3) (1994 & Supp.1997). Thus, in order to find that Titus has title to the Truck, this Court must find (1) that the vehicle was entrusted to Madore; (2) that Madore is a "merchant;" (3) that Madore is a merchant "who deals in goods of that kind;" and (4) that Titus was a "buyer in ordinary course of business." § 382–A:2–403(2).

■ Requirements one and two are easily met. Shaker does not dispute that it transferred the vehicle to Madore, or that Madore is a merchant.[2] The affidavit submitted by Robert A. LaCroix, President of Shaker, states that Shaker voluntarily transferred possession of the vehicle to Madore's service division. LaCroix Aff.; see 1 James J. White & Robert S. Summers, Uniform Commercial Code § 3–12(c), at 191 & n. 32 (4th ed. 1995) ("Entrusting usually falls into one of four common fact patterns.... Third, George leaves goods to be repaired with Dealer who resells them to a buyer in ordinary course.") (citations omitted); Anderson, Uniform Commercial Code, Sales §§ 2–403:42–43 (3d ed.1994); see Underhill Coal Mining Co. v. Hixon, 438 Pa.Super. 219, 652 A.2d 343, 346 (1994) (trespasser on land who converted timber has void title; court relied on common law, stating that "the U.C.C. contains no suggestion that intended to alter this [common law] principle" where "owner never assented to the obtaining of the goods by the person from whom the good faith purchaser bought them") (emphasis added); see also Litchfield v. Dueitt, 245 So.2d 190 (Miss.1971). Therefore, under section 2–403(3), this Court finds that Shaker "entrusted" the vehicle to Madore since it delivered the vehicle to Madore and Madore acquiesced to its retention. See § 382–A:2–403(3).

■ However, Shaker disputes requirements three and four. Shaker, in its re-

2. Section 382–A:2–104(1) defines "merchant" to mean:
   a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.
   N.H.Rev.Stat.Ann § 382–A:2–104(1) (1994 & Supp.1997).

sponse, claims that Madore is not a merchant "who deals in goods of that kind," § 382–A:2–403(2)—that Madore's service department is separate and distinct from its sales business enough to render section 382–A:2–403(2) inapplicable. Shaker stresses it left the vehicle at Madore's service department, not its sales department, and requests that this Court theoretically segregate the two departments and render the notion of "goods of that kind" to refer only to sales. However, the statute is to be read from the buyer's perspective, not the party who entrusted the goods. *See* 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 3–12(c), at 193 & nn. 38–40 (4th ed. 1995) (Section 2–403 is to be viewed from the buyer's perspective, not the entruster: "[T]he concern of [section] 2–403 is with a narrower class based on appearances. An individual buying a product from an apparent dealer in such goods expects to get good title.").

In its responsive argument, Shaker cites *Gallagher v. Unenrolled Motor Vessel River Queen*, 475 F.2d 117 (5th Cir.1973).[3] However, that case is distinguishable because the Court of Appeals held that boat owners who *rented* a stall at a marina did not entrust their boat to either the sales or service business of the marina. *Gallagher*, 475 F.2d at 118.

In fact, where a merchant performs both service and sale functions, one cannot divorce a sales business from a service business in order to distinguish a merchant who deals "in goods of that kind" for the purposes of section 2–403. *Perez–Medina v. First Team Auction, Inc.*, 206 Ga.App. 719, 426 S.E.2d 397 (1992) (in an unreported decision, the Georgia Supreme Court denied certiorari) ("Under the statute [§ 2–403], the tractor was 'entrusted' despite the fact that it was placed in Lara's possession only for the purpose of installing equipment for appellant rather than for sale."). In *Perez–Medina*, the court stated that section 2–403 requires,

from an objective viewpoint, that the entruster know, or in the exercise of reasonable diligence should know, that he placed the goods with one who might reasonably appear to third persons to be a dealer in the types of goods in question.

*Perez–Medina*, 426 S.E.2d at 399 (*citing* ANDERSON, UNIFORM COMMERCIAL CODE, SALES, § 2–403:34 (3d ed.1994)). Shaker disputes neither that Madore might reasonably appear to be a dealer who sells cars, nor that Titus should have been suspicious when he bought the vehicle. *See* LaCroix Aff. Rather, Shaker just requests that this Court split Madore's business into sales and service divisions. However, this runs against the policy behind section 2–403, which is to put the risk of loss with the entruster if the business with which the property is entrusted can be viewed objectively by the purchasing party as "one who deals in goods of that kind." *See* 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 3–12(c) (4th ed.1995).

Shaker also alleges that Titus was not a buyer in the ordinary course under section 382–A:2–403(2). New Hampshire RSA § 382–A:1–201(9) states:

"Buyer in ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker(4)27 "Buying" may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for on in total or partial satisfaction of a money debt.

---

**3.** Titus referred to *Dartmouth Motor Sales, Inc. v. Wilcox*, 128 N.H. 526, 517 A.2d 804 (1986), which is just as inapplicable to the instant case. That case involved a purchaser who bought a vehicle with a bad check, and thus did not obtain valid title under N.H. RSA chapter 261, who then sold it, *with facially valid title*, to an innocent party. *Id.* The court held that Article 2–403 of the New Hampshire Uniform Commercial Code takes precedence over the title statute: the purchaser obtained voidable title, and the good faith, second "innocent" purchaser obtained good title. *Id.*

N.H.Rev.Stat.Ann. § 382–A:1–201(9) (1994 & Supp.1997).

Shaker asserts that since Titus signed a "no money down" agreement with Madore, which then assigned that agreement to BNH for $11,475.00, Titus was neither a "buyer" nor a "buyer in the ordinary course." However, section 1–201(9) clearly states that "buying" may be "on unsecured credit and includes securing goods … under a preexisting contract for sale." § 1–209(9). Titus' affidavit states that "[t]he Madore dealership arranged financing for my purchase through the Bank of New Hampshire and prepared a retail installment contract to evidence that financing." Titus Aff., ¶ 5. Moreover, in *National Shawmut Bank of Boston v. Jones,* 108 N.H. 386, 236 A.2d 484 (1967), the New Hampshire Supreme Court found that the defendant was a buyer in the ordinary course of business where he bought a car "in the ordinary course from a person in the business of selling automobiles." *National Shawmut Bank of Boston,* 236 A.2d at 485. The "ordinary course" to which the court referred involved the defendant executing a "Retail Installment Contract" with Wentworth Motor Company Inc., which was later assigned to the plaintiff. *Id.* Titus, therefore, "bought" the Truck from Madore.

As to whether Titus is a "buyer in [the] ordinary course," § 1–209(9), Shaker does not dispute that Titus bought the vehicle ignorant of Shaker's potential claim to its title. LaCroix, Aff.; *see* 1 James J. White & Robert S. Summers, Uniform Commercial Code § 3–12(c), at 195 & n. 50 (4th ed. 1995) ("Generally, however, to disqualify the purchaser, it is necessary to show that the purchaser had 'knowledge that the sale to him [was] in violation of the ownership rights … of a third party,'—not just knowledge that a third party had some interest.") (internal citations omitted). Titus bought on unsecured credit, unaware that his purchase was "in violation of the ownership rights or security interest of a third party." *Id.* In addition, Titus' affidavit states that he bought three cars from Madore in the past. Titus Aff. Finally, when Titus bought the vehicle, he did not do so in "total or partial satisfaction of a money debt." § 382–A:1–201(9); *see also Borg–Warner Acceptance Corp. v.*

*Dugger,* 9 B.R. 85 (Bankr.N.D.Tex.1981) (a secured creditor was not a "buyer in the ordinary course" where the transfer of the security interest was for satisfaction of a money debt). Therefore, this Court finds that Titus was a "buyer in the ordinary course of business" under section 382–A:1–201(9). *See Perez–Medina* 426 S.E.2d at 400 ("[N]or do we find any peculiar circumstances about the sale sufficient to raise a question of fact as to whether there was a good faith purchaser.").

Thus, since the Court cannot split the vehicle in half, partial summary judgment is granted in favor of Titus. In difficult situations such as this, the law dictates that the balance must be tipped in favor of the buyer in the ordinary course,

> because that frees the marketplace and promotes commerce. This goal, called "security of transactions," is an ideal of the commercial law. The protection of property rights … is not an ideal of the commercial law.… On the assumption that both the entruster and buyer have been equally victimized by the dishonesty of the merchant-dealer, section 2–403(2) resolves the issue so as to free the marketplace, rather than protect the original owner's property rights.

*Thorn v. Adams,* 125 Or.App. 257, 865 P.2d 417 (1993) (*citing* 2 Hawkland, UCC Series § 2.403:07 (1992)). Therefore, Titus' motion for partial summary judgment is granted. As such, the Court orders that Shaker deliver the Truck's title forthwith to Titus.

This opinion constitutes the Court's findings of facts and conclusions of law in accordance with Federal Rule of Procedure 7052. The Court will issue a final judgment consistent with this opinion.