**INTERNATIONAL HARVESTER CREDIT CORP., Plaintiff,**

v.

**Mickey CLENNY and Terry Clenny, Defendants.**

**Civ. A. No. 79–29–ALB.**

United States District Court, M. D. Georgia, Albany Division.

Jan. 20, 1981.

---

Henry C. Custer, Albany, Ga., for plaintiff.

Peter Zack Geer, Albany, Ga., for defendants.

OWENS, District Judge:

This case came on for jury trial in Macon, Georgia on March 6, 1980. After hearing the testimony of all witnesses and the arguments of counsel, the court concluded that there were no disputed issues of fact to be decided by the jury. The jury was excused and the attorneys were invited to submit briefs on the legal issues raised at trial. The following constitutes the court's findings of fact and conclusions of law in accordance with Rule 52(a), Federal Rules of Civil Procedure.

### Findings of Fact

In March 1977, defendants jointly entered into a retail installment sales contract to purchase a Model 986 International tractor from Faircloth International, Inc., an International dealer in Bainbridge, Georgia, which sold agricultural equipment manufactured by International Harvester, Inc. The total purchase price was $21,796.08. In February 1978, defendants jointly entered into a second retail installment sales contract to purchase a Model 1568 International tractor from Faircloth International, Inc. at a total purchase price of $25,727.15. Faircloth International, Inc. validly assigned these two installment sales contracts to International Harvester Credit Corporation (hereinafter referred to as IHCC), and IHCC in turn paid Faircloth for the tractors.

In the latter part of December 1979, defendants transferred the Model 986 tractor to Tri-County Tractor Company of Bainbridge, Georgia as a trade-in on another tractor. As a part of this transaction, Tri-

County Tractor, through its owner Mervin Barbaree, assumed the obligation to pay IHCC the remaining balance due on the defendants' contract with IHCC for the Model 986 tractor. Mr. Barbaree informed IHCC that he had possession of the tractor as a result of this transaction with defendants, and obtained from IHCC an exact payoff figure on the contract of $14,695.55. Mr. Barbaree drew a check from that amount on Tri-County Tractor and the check was delivered to Stewart Griggs, an IHCC finance sales representative, as a payoff on the Model 986 tractor. IHCC deposited the check in its account for collection, but the check was later returned to IHCC on the instructions of Mr. Barbaree, as IHCC had informed him that several hundred dollars in interest on the debt had been overlooked. IHCC thereafter agreed to accept the original amount and tried to collect on the check, but Mr. Barbaree then refused to pay. He testified at trial that his banker had advised him not to pay the check until International Harvester had improved its then troubled financial situation. Stewart Griggs, the IHCC representative in charge of the account, went to Mr. Barbaree several times during January 1979 to attempt to collect on the check, but Mr. Barbaree refused to honor the check. Shortly before the trial of this case, plaintiff filed suit against Mr. Barbaree in the Superior Court of Decatur County, Georgia, seeking to recover on the unpaid check. On May 16, 1980 judgment was entered by that court against Mr. Barbaree for the amount of the check, and a fi. fa. was issued on the judgment on May 22, 1980. That fi. fa. remains unsatisfied.

The Model 986 tractor remained at the Tri-County Tractor dealership for sixty to ninety days including the entire period during which Mr. Griggs was attempting to collect from Mr. Barbaree on the check. The tractor was finally sold by Mr. Barbaree in the ordinary course of the business of Tri-County Tractor Company. Defendants were notified in the latter part of January 1979 that Mr. Barbaree had refused to honor the check, but at this time IHCC did not request that defendants themselves pay the balance due under the contract. Mr. Bartowe, a second sales representative of IHCC, testified at trial that he visited defendants on December 5, 1978 and again in February 1979, and on both occasions informed defendants that the debt was their responsibility if Mr. Barbaree failed to pay. Tr. 33.[1] IHCC claims that this testimony shows that IHCC intended to hold defendants responsible for the debt. Defendant Terry Clenny testified, however, that only the Model 1568 tractor was discussed during the December visit by Mr. Bartowe. Tr. 43. Even if Mr. Bartowe did discuss the Model 986 tractor during the December 5th visit to defendants, this occurred before the trade-in of the Model 986 tractor to Tri-County Tractor Company and IHCC's subsequent acceptance of the check from Mr. Barbaree in payment of the balance due on the contract, and thus before a novation of the contract is alleged to have occurred. Therefore, Mr. Bartowe's testimony is not inconsistent with a finding that IHCC later agreed to a novation of the contract.

In the latter part of November 1978 defendants informed Mr. Kenneth Faircloth of Faircloth International, Inc., that they were unable to meet the payments on the second tractor which they had purchased from Faircloth, the Model 1568, and defendants requested that Mr. Faircloth sell the tractor and clear the contract. Mr. Faircloth agreed and the tractor was returned to the Faircloth dealership. IHCC was aware that the tractor had been returned to Faircloth International, Inc. by the defendants for resale by Mr. Faircloth. The tractor remained at the dealership for several weeks until it was sold by Mr. Faircloth in late December 1979 in the regular course of his business. The $16,000 proceeds of the sale were deposited into the Faircloth International, Inc. regular business account. In mid-January 1979 International Harvester

1. Stewart Griggs, as the IHCC representative in charge of collecting the account, logically would have been the best witness as to the intentions of IHCC regarding a novation of the contract. However, Mr. Griggs did not testify at trial.

terminated the Faircloth International dealership and subsequently repossessed and liquidated the entire inventory. IHCC thereafter brought suit against Faircloth on this contract as well as others and was awarded a default judgment.

On March 28, 1979 attorneys for IHCC notified defendants that IHCC considered them to be in breach of the sales contracts. Defendants were given ten days to pay the balances due on both contracts plus interest. Defendants failed to pay and on April 12, 1979 IHCC brought this suit claiming that defendants had defaulted under the contracts by disposing of the tractors secured by the contracts. Plaintiff IHCC seeks to recover a balance of $15,192.12 remaining on the contract for the Model 986 tractor, a balance of $21,198.60 due on the Model 1568 tractor contract, ten per cent interest on both contracts from February 28, 1979, and attorneys fees pursuant to Ga.Code Ann. § 20–506. Defendants admit having defaulted on the contracts, but contend that they were discharged from both contracts by IHCC.

### Conclusions of Law

Defendants contend that IHCC agreed to the substitution of Tri-County Tractor in place of the defendants and to the extinguishment of defendants' liability, thereby effecting a novation of the contract for the Model 986 tractor which discharged defendants from the contract. Plaintiff contends, on the other hand, that by Tri-County Tractor's assuming the debt defendants merely become sureties on the debt with Tri-County Tractor becoming the principal debtor.

■ Under Georgia law the elements of novation are: (1) a previous valid obligation, (2) the agreement of all the parties to a new contract, (3) extinguishment of the old contract, and (4) validity of the new contract. Miller-Terrell, Inc. v. Srother, 85 Ga.App. 763, 70 S.E.2d 160 (1952); United States v. Fay, 364 F.2d 15 (2nd Cir. 1966). The mere assumption of a debt by a third party is not sufficient to establish a novation of the original contract unless there is shown an intention to release the first obligor and to extinguish his liability; otherwise, the assumption of the debt by the third party will be presumed to be merely additional security. Sportsman Camping Center of America, Inc. v. Bagwell, 140 Ga.App. 312, 231 S.E.2d 118 (1976). Release of the original debtor and substitution of a new debtor may be by express terms or may be inferred from the facts and circumstances attending the transaction and the parties' subsequent conduct. Yancey Brothers Co. v. Bowling, 92 Ga.App. 291, 88 S.E.2d 566 (1955).

■ The question here is whether plaintiff IHCC assented to the extinguishment of defendants' liability under the contract and to the substitution of Mr. Barbaree and Tri-County Tractor as the sole obligor on the balance due under the contract. The circumstances surrounding the trade-in of the tractor and the subsequent conduct of plaintiff IHCC lead the court to conclude that IHCC did intend to accept Mr. Barbaree in the place of defendants and to look solely to Mr. Barbaree for payment of the debt. IHCC assented to the transfer of the tractor to Mr. Barbaree, although the contract prohibited transfer of the collateral without the written consent of IHCC. IHCC accepted the check drawn on Tri-County Tractor in full satisfaction of the debt. When the check was not honored, IHCC went to Mr. Barbaree at least three different times attempting to collect. IHCC had the right under the contract and Ga.Code Ann. § 109A–9–503 to repossess the tractor at any time, and was aware that the tractor was being held for sale on the dealership lot. The tractor remained on the Tri-County Tractor lot for from sixty to ninety days, yet plaintiff continued to attempt to collect from Mr. Barbaree rather than simply exercise its right to repossess and resell the tractor. IHCC did not attempt to collect the debt from defendants until over two months later. If IHCC considered defendants to be sureties on the debt, as they now contend, why did IHCC not seek satisfaction of the debt from defendants after it had failed on several occasions to collect from Mr. Barbaree? Significantly, when IHCC finally sought payment

from defendants, it did so on the grounds that defendants had breached the contract by disposing of the collateral rather than on the grounds that defendants were sureties for the debt.

■ Based on the totality of plaintiff's conduct in this case, the court finds that plaintiff assented to a novation of the contract for the Model 986 tractor, thereby discharging defendants from their obligation to pay the remaining balance on the contract. In reaching this conclusion, the court recognizes that the question of a party's intention to effect a novation is ordinarily reserved for determination by a jury. *Mayer v. Turner*, 142 Ga.App. 63, 234 S.E.2d 853 (1977). However, it is the court's opinion that the facts of this case are such that reasonable men could not differ in finding that plaintiff intended to accept Mr. Barbaree and Tri-County Tractor Company as the sole obligor on the debt in place of defendants.

■ A second basis on which the court finds that plaintiff IHCC is precluded from recovering against these defendants for the remaining debt on the Model 986 tractor stems from principles of equity. It is a well-settled principle of equity that one who sleeps on his rights and thereby fails to protect himself from a subsequent loss may be precluded thereafter from recovering that loss. Plaintiff IHCC slept on its rights in this case, and by doing so failed to protect itself from a loss on the contract. Although IHCC had the right to repossess the Model 986 tractor, IHCC watched the tractor sit on the Tri-County Tractor Company lot for sixty to ninety days while holding the uncollected check, knowing that the tractor might be sold at any time and that a sale would result in loss of its security interest under Ga.Code Ann. § 109A-2–403.[2] Nevertheless, IHCC failed to repossess the tractor and the tractor was sold by Mr. Barbaree in the ordinary course of his business, resulting in extinguishment of IHCC's rights in the tractor. IHCC failed to notify defendants until the end of January 1979 that Mr. Barbaree had failed to honor the check, and did not seek payment of the debt from defendants themselves until March 1979. If IHCC had notified defendants when Mr. Barbaree first failed to pay the debt, defendants could have protected themselves by taking action against Mr. Barbaree to assure that the debt would be satisfied or to recover the Model 986 tractor to hold as collateral for the debt. When defendants were finally given notice by IHCC that the debt remained unsatisfied, it was too late for defendants to protect themselves by recovering the tractor.[3]

Plaintiff had the duty under the Uniform Commercial Code to exercise good faith and diligence in its dealings with defendants. Ga.Code Ann. § 109A-1–102. Plaintiff could have recovered much of the debt due on the contract by repossessing and reselling the tractor after defendants had defaulted on the contract by transferring the tractor; nevertheless, plaintiff slept on its rights and allowed its security interest to be extinguished by sale of the tractor. Plaintiff also did not act so as to afford defendants the opportunity to protect themselves. Now plaintiff seeks to recover from these defendants for its loss on the contract. Un-

---

2. Ga.Code Ann. § 109A-2–403 provides in pertinent part:

"(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) 'Entrusting' includes any delivery or *any acquiescence in retention of possession* regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." (emphasis supplied).

A good discussion of this "entrusting" statute may be found in *Simson v. Moon*, 137 Ga.App. 82, 222 S.E.2d 873 (1975).

3. This concept of sitting on one's rights, as it applies in this case, is similar to the equitable doctrine of laches, a doctrine grounded upon the inequity of permitting enforcement of a claim where some change in circumstances has taken place which would make enforcement of the claim unjust. The elements of laches are inexcusable delay by a plaintiff in asserting his rights and undue prejudice to defendant as a result.

der these circumstances, equity and this court's good conscience will not allow plaintiff to recover from these defendants.

 It is the opinion of the court that plaintiff IHCC is also precluded by equitable principles from recovering from these defendants on the contract for the Model 1568 tractor. IHCC again slept on its rights with regard to this contract. Defendants were in default under the contract due to their failure to make the payments due thereunder and their return of the tractor to Faircloth International, Inc. IHCC was aware that the tractor had been returned by defendants for resale by Mr. Faircloth, and IHCC had the right at any time to repossess and resell the tractor themselves in order to recover at least a portion of the balance due on the contract. Nevertheless, IHCC stood by and allowed the tractor to be sold by Mr. Faircloth, thereby extinguishing IHCC's rights in the tractor. Ga.Code Ann. § 109A–2–403. Under the contract of assignment here, IHCC had a right of recourse against Faircloth International, Inc. for the $16,000 proceeds from the sale of the tractor. Nevertheless, IHCC failed to collect those proceeds after it learned of the sale of the tractor by Faircloth. Faircloth International, Inc. subsequently experienced financial difficulties and no longer possessed the funds to pay off IHCC for the tractor. Therefore, any loss IHCC may have suffered on this contract was due to its own failure to collect the proceeds of the sale of the tractor from Faircloth, and by its failure to keep itself apprised of its dealer's financial condition. Under these circumstances, it would be inequitable to allow plaintiff to recover its loss from these defendants.

Soon after IHCC learned of Faircloth International, Inc.'s financial difficulties, IHCC terminated the dealership and liquidated all of its assets. There is some question as to how much of the $16,000 proceeds of the sale of the Model 1568 tractor were used in the business. However, the money received from the sale of the tractor went to Faircloth International, Inc., and the assets of Faircloth International, Inc. were thereafter acquired and liquidated by IHCC. The amount received by IHCC upon liquidation of the assets far exceeded the balance due on the contract for the Model 1586 tractor. While Faircloth International, Inc. may have had other contracts with and debts to IHCC, IHCC cannot fairly argue that the proceeds of liquidation should be credited first against those other debts and last against the debt owed by Faircloth International, Inc. as a result of its resale of the Model 1568 tractor. Under these facts, it is the court's best judgment that the debt to IHCC on the contract for the Model 1586 tractor has been satisfied insofar as these defendants are concerned.

For all of the above stated reasons, the court holds that plaintiff is not entitled to recover from these defendants on either of the contracts here at issue. Accordingly, let judgment be entered in favor of defendants.