Bernard Snell, Asst. U.S. Atty., Macon, Ga., for plaintiff.

Gary L. Moser, Valdosta, Ga., Lynn Kelley, Allen & Kelley, Tifton, Ga., for defendant.

**UNITED STATES of America, Plaintiff,**

v.

**GEORGIA VEGETABLES COMPANY, INC., Defendant.**

**Civ. A. No. 88–56–VAL (WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

Dec. 7, 1990.

### ORDER

OWENS, District Judge.

In 1982, at a time when they were indebted on a secured basis to Farmers Home Administration for over $600,000.00, Warren F. Paulk and Fred D. Paulk, d/b/a Paulk Farms, grew and sold $305,643.00 worth of bell peppers, cucumbers and snapbeans to defendant Georgia Vegetable Company, Inc. and did not remit the proceeds to Farmers Home Administration.

The bell peppers, cucumbers and snapbeans were grown on some 300 acres of land in Atkinson County, Georgia that Messrs. Paulk rented from Jimmy B. Metts. Jimmy B. Metts did not own the land. Mr. Metts' wife, Betty Fender Metts, upon her father's death on May 20, 1958, had inherited a life estate in the property. Mr. Metts looked after his wife's property and in doing so rented it for her to Messrs. Paulk with the understanding that the Paulks would install a center pivot irrigation system and pay Mrs. Metts $7,500.00 rent (30 acres at $25.00 per acre) per year for ten years. Unable to finance the center pivot irrigation, the Paulks renegotiated with Mr. Metts, as a result of which Mr. Metts agreed to install and finance the center pivot system and the Paulks agreed to pay him the $12,100 plus interest in annual payments on the $121,000.00 principal and

interest Mr. Metts owed for the irrigation system and pay Mrs. Metts $7,500.00 per year land rent. Neither agreement was in writing, but pursuant to the latter the Paulks were growing vegetables on the Metts' farm.

The Farmers Home Administration received five promissory notes from Messrs. Paulk and received and recorded five security agreements and financing statements giving notice that Warren F. Paulk and Fred D. Paulk were indebted to Farmers Home Administration on, among other things, crops growing or to be grown on the farm or other real estate owned by Jimmy B. Metts of Willacoochee, Georgia on County Road, Land Lot # 26 in the Tenth Land District (Exhibit A).

Georgia Vegetables' sole stockholder, Robert Grist, unfamiliar with the Uniform Commercial Code in general and Uniform Commercial Code financing statements in particular, did not check at the county courthouse to see if Messrs. Paulk were indebted to anyone on a secured basis. Faced with the United States' claim of conversion of mortgaged property, Georgia Vegetables, nevertheless, claims that had its representatives gone to the courthouse they would not have been put on notice of the Farmers Home Administration's secured interest because the financing statement as required by O.C.G.A. § 11–9–402(1) and (5), to wit:

**11–9–402. Formal requisites of financing statement; amendments; mortgage as financing statement.**

(1) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor, and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown, or minerals or accounts subject to subsection (5) of

Code Section 11–9–103, or when the financing statement is filed as a fixture filing (Code Section 11–9–313) and the collateral is goods which are or are to become fixtures, the statement must also comply with subsection (5) of this Code section. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor.

\*    \*    \*    \*    \*    \*

(5) A financing statement covering crops growing or to be grown, or minerals or the like (including oil and gas) or accounts subject to subsection (5) of Code Section 11–9–103, or a financing statement indexed as a fixture filing (Code Section 11–9–313) must show that it covers this type of collateral, must recite that it is to be indexed in the real estate records, and the financing statement must contain a description of the real estate. If the debtor does not have an interest of record in the real estate, the *financing statement must show the name of the record owner or record lessee.*

\*    \*    \*    \*    \*    \*

(8) A financing statement substantially complying with the requirements of this Code section is effective even though it contains minor errors which are not seriously misleading. (emphasis added).

did not state on farm or other real estate owned by Betty Fender Metts. That omission, they suggest, invalidates the security interest Farmers Home Administration would otherwise have had.

Warren F. Paulk and Fred W. Paulk, d/b/a Paulk Farms, commenced a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Georgia in the fall of 1982. On May 5, 1983, a consent order resolving Farmers Home Administration's complaint as to debtor's failure to pay Farmers Home Administration the proceeds of their 1982 crop was entered (Exhibit B). Defendant directs the court's attention to the following portions thereof:

2. During the pendency of the Chapter 11 case, Paulk Farms has used ap-

proximately $225,000 from the proceeds of their 1982 crops on which FHA had a valid and perfected security interest which such proceeds constituted cash collateral. Such proceeds were used without the Consent of FHA and without the prior authorization of the Bankruptcy Court. Such proceeds have been utilized by Paulk Farms to cultivate, plant and maintain the above enumerated 1983 crops.

3. Paulk Farms has also obtained credit in the normal course of business from farm suppliers in the cultivation, planting and maintenance of the 1983 crops.

FHA and Paulk Farms have reached an agreement regarding the continued use of a portion of FHA's cash collateral and other collateral,

\* \* \* \* \* \*

7. Pursuant to 11 U.S.C. § 364(a), Paulk Farms may continue to use the $225,000 which was or is cash collateral and which is otherwise secured by a crop lien pursuant to 11 U.S.C. § 552(b), for which a new financing statement will be filed, and so long as debtor obeys the order of the Court above such continued pre-existing lien shall constitute adequate protection for FHA and the automatic stay of 11 U.S.C. § 362 shall remain in effect. FHA's pre-existing lien shall not extend to a sum greater than $225,000 net proceeds from the 1983 crops.

and having done so, contends that the United States made an intentional and voluntary relinquishment of its security interest in the 1982 crop proceeds and substituted therefor a security interest in the Paulk's 1983 crops which were not converted by defendant. For authority, defendant points to *Matter of Thomas*, 43 B.R. 401, (Bkrtcy.M.D.Ga.1984), a 1984 decision of this court's bankruptcy court, in which the court found that Farmers Home Administration waived its security interest by allowing the debtor to use its secured proceeds. Defendant also relies upon *International Harvester Credit Corp. v. Clenney*, 505 F.Supp. 983 (M.D.Ga.1981).

The United States vigorously disputes defendant's contentions urging the court to find the financing statement to be in compliance with the Uniform Commercial Code as interpreted by the United States Bankruptcy Court for the District of Kansas in *In re McMannis*, 39 B.R. 98 (Bkrtcy.D. Kan.1983). The United States also contends that the specific language of the consent bankruptcy order, to wit: "... and nothing herein shall constitute a waiver of FHA's legal rights to collect any and all other outstanding indebtedness" was intended to preserve Farmers Home Administration's rights against third parties such as defendant; even if the consent order is found to be a waiver of Farmers Home Administration's security interest in the Paulk's 1982 crop, it should be limited, the United States argues, to the specifically mentioned $225,000.00 of the 1982 crop purchased by defendant, leaving this defendant owing $305,643.00 less $225,000.00 plus interest and costs.

The parties deposed Earl Walter Douglas, presently employed with the Bank of Hazelhurst and formerly branch manager of the Farmers Home Administration office which was responsible for servicing Warren and Fred Paulk's loan. Mr. Douglas became branch manager in late July, 1982, concluded the Paulks were possibly selling mortgaged 1982 crops without accounting to Farmers Home Administration for the proceeds, and gave the Paulks written notice of that possibility by letters dated August 13 and 26, 1982.

The Farmers Home Administration had a security interest, generally speaking, in all crops grown by Messrs. Paulk on many farms owned by the Paulks and others, but had an understanding with the Paulks that as long as the Paulks brought their crops sales proceeds to Farmers Home Administration or accounted to Farmers Home Administration they would be permitted to retain—Farmers Home Administration would release—as much cash collateral money as they needed to pay taxes, farm operating expenses and personal living expenses. As Mr. Douglas explained, the Farmers Home Administration kept loaning

to the Paulks even when the Paulks were in default because "it was the Administration's policy at that particular time to do whatever you could to keep them out there. It may not have been a decision by the local office or by Mr. Jowers (Mr. Douglas' predecessor), but it was a policy from the Administration to do whatever to keep them (the Paulks) going." (Douglas Deposition, p. 39).

Plaintiff's exhibit 4 to the depositions taken August 29 and 30, 1989, is Farmers Home Administration's compilation of all the 1982 crops sold by the Paulks—totalling $723,085.00—none of which went to Farmers Home Administration to be released or to reduce their Farmers Home Administration loan.

Defendant's exhibit 3 to the said depositions is Farmers Home Administration's record showing how Farmers Home Administration kept up with the Paulk's crop sales and how much of the proceeds the Paulks were permitted to retain and how much Farmers Home Administration kept and used for repayment of their Farmers Home Administration loan. That exhibit confirms Mr. Douglas' testimony that Farmers Home Administration released whatever crop proceeds were needed by the Paulks, keeping almost nothing to reduce the Paulk's indebtedness.

During the Paulk's Chapter 11 bankruptcy proceeding Mr. Douglas was Farmers Home Administration's representative, and the United States Attorney for the Southern District of Georgia was the government's attorney. Asked to, in general, explain the consent order and in particular to explain how the $225,000.00 in the consent order was arrived at, Mr. Douglas stated:

Q Do you recall a meeting with the Paulks in 1983?

A Yes, I met with them on several occasions in '83.

Q Do you recall in 1983 talking with them and an employee of Georgia Vegetable Company indicating that you were willing to substitute the '82 lien for the '83 crop?

A I believe all that was done in the—in Savannah in the bankruptcy proceedings.

After we filed and got production of documents, we found that a lot of crops had been sold without bringing it to the office. We determined that the money was used to grow the 1983 crop, and we felt that it was in the best interest of the agency to replace that lien with the 1983 crop; and it was done, and I think there was a Consent Order entered.

Q Okay. You recall receiving checks from Georgia Vegetable Company, Incorporated?

A In '83, you're right. We got the checks in and then we would release them based on the Consent Order.

Q Basically it's your testimony you substituted the '82 lien for the '83 lien?

A That's basically what we did.

\* \* \* \* \* \*

Q All right. You sent a letter to Georgia Vegetables; did you not? Do you recall that letter?

A That I don't know. Let me clarify something up, maybe. Whether we were substituting the Georgia Vegetable income for the '83 crop, it was a combination of all of that that they submitted in the Bankruptcy Court, which was a list of—well, you got it all right there. Whether it was all peppers or whatever, I don't think it was designated out as we're going to agree for peppers to be substituted from '82 to '83. It was a combination of all the '82 crop. It was not designated the best I can remember.

Q Okay. I think I understand what you're saying. You're saying the whole '82 crop, notwithstanding what it was, was substituted for the '83 crop?

A It was an agreement that the '82 income had been rolled over into the '83 and the crop had already been grown, and with the Consent Order, which you probably have, explains what the agreement in the Bankruptcy Court.

\* \* \* \* \* \*

Q (By Mr. Moser) Okay. Now then, we're talking *Plaintiff's 4* these days.

A Okay.

Q That document then *indicates what the Paulks have said was sold during*

*the '82 crop* and you were going to talk about something about the soybeans needing to come off, I believe?

A  Yes, the soybeans were the '81 crop. At the beginning of the list is twenty thousand—eighteen thousand ($18,-000.00) dollars worth of soybeans sold in January of '82. They were the '81 crop. The wood, we didn't have a lien on. They had rented out—there's some rent here, I don't know what that is. We didn't have a lien on it. They were producing some seed corn. How they came up with that, I don't know. Then the rest of it represents—well, there is another large entry on soybeans, which they brought that in. The rest is peppers—there's a total of seven hundred and twenty-three thousand dollars ($723,-000.00).

Q  Some of which the Farmers Home Administration determined they had no security interest in and some of it then was applied on a 1981 debt, mainly the soybeans that you were talking about?

A  Yes.

Q  All right. Did Farmers Home Administration attempt to do anything to try to find out where the rest of the money, the '82 money, had gone to, other than the two hundred and twenty-five thousand dollars ($225,000.00) that was admitted spent on the '83 crop?

A  I think what we did in the Bankruptcy Proceeding we took all of that money and then we sorted through all of the '82 checks, I mean deposit slips and checks; and we took the loan, and that's what we came up with; that if he would have brought all the money—best I can remember now, *if he had brought all the money into the office,* excluding wood and so forth and so on, *we should have got a total of two hundred and twenty-five thousand dollars ($225,000.00); but it don't make a bit of sense; does it?* You want to let's go off the record again and explain it or do you want to stay on and let me try to explain it again?

Q  Well, let's just—

A  Let's take off—let's say that they figure—well, let's say we're entitled to it all. We had a lien on every bit of it,

seven hundred and twenty-three thousand dollars ($723,000.00); and again, he did not bring any of the money into the office in '82, okay. In the beginning of '83, we start analyzing where all of the money went to in '82; and the only way to do it is to—if he deposited all of the money into a bank account is try to sort through, if he listed on the bottom of his checks what the money was used for. And we gave him three hundred and fifty thousand dollars ($350,000.00) in '82, taking the income that he had and expenses that he incurred, plus the loan, based on what we could determine. If he would have brought all of the money in there to us, we could have released all of it besides three hundred and twenty-five thousand ($325,000.00) dollars. We should have got that.

Q  Basically the same amount that Georgia Vegetable is being used for right now; would that be correct? Pretty close?

A  It's pretty close to it.

Q  Because the prayer of the lawsuit asked for three hundred five thousand six hundred and forty-three ($305,643.00) dollars?

A  Now determining that two hundred and twenty-five thousand dollars ($225,-000.00), was an extreme long process and it should be in them records.

Q  All right. Assuming that he had brought all this three hundred five thousand six hundred and forty-three ($305,-643.00) dollars into you in '82, okay? Would you have release some of that money back to him for operating expenses?

A  That's a hard question to ask—I mean to answer. If Paulk Farms would have brought it in there to me, I wouldn't have released none of it. I mean, I would not have done it period; but that's my answer, I reckon. But now whether —it's kind of hard to pinpoint whether you would have done it or whether you wouldn't. That's hard to answer.

Q  I understand. But you did through all this accounting process that FHA went through with the Paulks in '83, you

did determine that what *FHA would have netted out of it, would have been two hundred and twenty-five thousand dollars ($225,000.00)?*

A Yeah. *You're correct.*

Q All right. So wouldn't it be safe to say that assuming all those transactions had been agreed to by FHA—

A —we should have got two hundred and twenty—

Q Two hundred and twenty-five thousand dollars ($225,000.00)?

A Is the *minimum* we should have got.

Q Okay.

A We should have been entitled to that above anybody else. That's correct.

(Douglas Deposition, pp. 8–9, 13, 42–45) (emphasis added).

As Mr. Douglas also stated, 1983 was a disastrous crop year because it rained too much. The Paulk's crops were flooded. As shown by Defendant's exhibit 3 to the deposition, Farmers Home Administration released all of the Paulk's 1983 crop proceeds—$47,396.76—to the Paulks to pay taxes, supplies and repairs, fuel, fertilizer and seed. Not a penny was retained by Farmers Home Administration to reduce the Paulk's debt to Farmers Home Administration.

On January 9, 1984, the Farmers Home Administration, by letter, notified defendant of its contention that defendant had purchased $305,642.00 of vegetables from Paulk Farms in which Farmers Home Administration had a security interest.

The issues are before the court on plaintiff's motion for summary judgment. The already recited facts are material and undisputed. There is no genuine issue of material fact. The court's task, therefore, is to decide issues of law.

### Adequacy of the Financing Statement

■ O.C.G.A. 11–9–402(8), as already quoted, provides that "[a] financing statement substantially complying with the requirements of this code section is effective even though it contains minor errors which are not seriously misleading."

Mrs. Betty Fender Metts, the owner of a life estate in the farm land on which the debtors, Messrs. Paulk, grew the crops in question, permitted her husband as her agent to rent her life estate for $7,500.00 per year to be paid to her and to install, finance and rent a center pivot irrigation system for some $12,100.00 per year to be paid to him. Mr. Metts was unquestionably Mrs. Metts' agent. Disclosure that the land in question was owned by Jimmy B. Metts, had the defendant gone to the courthouse and read the financing statement, would have "raise[d] a warning flag, as it were, providing a key to the identity of the property ..." [citations omitted] from which the defendant was buying vegetables. *United States v. Big Z Warehouse*, 311 F.Supp. 283, 284 (D.C.Ga.1970). The Uniform Commercial Code requires no more.

Showing the owner as Jimmy B. Metts under these circumstances is nothing more than a minor error which is not seriously misleading. The financing statement is, therefore, effective. See *In re McMannis*, 39 B.R. 98 (Bkrtcy.D.Kansas 1983).

### The May 5, 1983, Consent Order of the Bankruptcy Court

■ The consent order acknowledges that Paulk Farms during the pendency of the Chapter 11 case (around November, 1982, until May 5, 1983) used approximately $225,000.00 of 1982's crop proceeds (which totalled some $723,000.00) to cultivate, plant and maintain their 1983 crops. The $225,000.00 total was Farmers Home Administration's then estimate of the amount of money Farmers Home Administration would have received and not released to the Paulks for payment of operating expenses had the Paulks turned over the some $723,000.00 received from the sale of their 1982 crops to Farmers Home Administration. In addition to the estimated expenditure of $225,000.00 the consent order acknowledges that the Paulks have also obtained credit [1] from farm suppliers

---

1. As shown by defendant's deposition exhibit 3, Farmers Home Administration permitted the entire receipts from the 1983 disastrous crop to

for the cultivation, planting and maintenance of 1983 crops.

Having so acknowledged, Paulk Farms and Farmers Home Administration then agreed that Paulk Farms would continue operating utilizing one checking account from which all expenses would be paid and into which all checks received for sale of crops—to be made payable to Farmers Home Administration and the Paulks—would be deposited after being brought to Farmers Home Administration for copying and endorsement. To secure Farmers Home Administration's endorsement the Paulks were required to promise in writing to use the funds "only for proper and necessary expenses relating to the 1983 crops which have already been planted including necessary living expenses." No monetary limit was placed on proper and necessary expenses or necessary living expenses.

Paulk Farms and Farmers Home Administration further agreed pursuant to 11 U.S.C. § 364(a) and 552(b) that Paulk Farms could continue to use the $225,000.00 1982 crop year cash collateral for which a new financing statement would be filed and that "FHA's pre-existing lien [would] ... not extend to a sum greater than $225,000 net proceeds from the 1983 crops."

Since Mr. Douglas estimated that Farmers Home Administration would have retained about $225,000.00 if the Paulk's 1982 gross sales of some $723,000.00 had been turned over to Farmers Home Administration and Farmers Home Administration had released "essential family living and farm operating expenses," (7 CFR 31962.17) it seems to the court that by stating "not extend to a sum greater than $225,000 net proceeds" the parties were saying that as in the past the Paulk's would be expected to grow and sell all their

be used to pay expenses which must have been

crops, that from the gross proceeds Farmers Home Administration would release its lien on money needed to pay essential family living and farm operating expenses and that the balance not to exceed $225,000.00 would be retained by Farmers Home Administration and applied to the Paulk's indebtedness. Net proceeds in excess of $225,000.00 would be given to the Paulks to use as they saw fit.

In reality, as Mr. Douglas in his deposition stated, the parties—the Paulks and Farmers Home Administration—agreed that Farmers Home Administration's 1982 crop lien would be replaced by a lien on the 1983 crops. Having given up its lien on the 1982 vegetable crop which defendant purchased from the Paulks, the Farmers Home Administration had no security interest in the Paulk's 1982 vegetable crop sold to defendant.

Farmers Home Administration's legal right to sue defendant Georgia Vegetables for conversion of the Paulk's 1982 crop is dependent upon Farmers Home Administration having had a security interest in the Paulk's 1982 crop, which would have attached to the monetary sales proceeds. O.C.G.A. § 11–9–306(2). Since Farmers Home Administration had no security interest in the Paulk's 1982 crop, it likewise had no security interest in the monetary sales proceeds. It, therefore, cannot recover from defendant Georgia Vegetables Company, Inc. for conversion.

The motion of the United States for summary judgment is DENIED. Let judgment be entered declaring that the United States for the Farmers Home Administration may not recover anything from defendant Georgia Vegetables Company, Inc.

IT IS SO ORDERED.

incurred on credit—$47,396.76.

APPENDIX

EXHIBIT A

PAULK, Warren F.
Paulk, Fred D.
Route Two
Willacoochee, GA 31650

UNITED STATES OF AMERICA
acting through
FARMERS HOME ADMINISTRATION

P.O. Box 1344
Douglas, GA 31533
*(County Office Address)*

and Filing Officer
82-80
Time: 10·00 AM
Date: Mar-30-1982
Atkinson County

1. This Financing Statement covers the following types or items of collateral, including proceeds and products thereof:
   (a) Crops, livestock, other farm products, farm and other equipment, supplies and inventory
   (b) 5 Bulk Barns (Powell) SN3438T,SN75688, SN76521, SN66797,SN75692

2. Disposition of such collateral is not hereby authorized.

3. Crops covered hereby are growing or are to be grown on, and any goods described in 1 (b) above which are or are to become fixtures are to be affixed to, the following-described real estate:

| Farm(s) or Other Real Estate • Owner | Approximate No. of Acres | County and State | Approximate Distance and Direction From a Named Town or Other Description |
|---|---|---|---|
| Warren F. & Fred D. Paulk | 80.51 | Atkinson, GA | Located approx. 2 miles NE of Willacoochee, GA on Land Lot #441 in the Fifth Land District |
| Warren F. & Fred D. Paulk | 73.30 | Atkinson, GA | Located approx. 2 miles NE of Willacoochee, GA on Hwy 135, Land Lot #480 in the Fifth Land District |

AND THIS FINANCING STATEMENT IS TO BE FILED IN THE REAL ESTATE RECORDS

Filed with: ☒ Filing Office in ___ATKINSON___ County ☐ Secretary of State

WARREN F. PAULK *(Signature of Debtor)*

FRED D. PAULK *(Signature of Debtor)*
(1) Filing Officer Copy — Alphabetical
* Record owner if required by State law, otherwise reputed owner.

UNITED STATES OF AMERICA

By PLEASANT L. JOWERS
Title County Supervisor
FARMERS HOME ADMINISTRATION
USDA-FHA FORM FHA 444A25 (Rev. 5-4-69)
FORM UCC-1 UNIFORM COMMERCIAL CODE

affixed to, the following-described real estate:

| Farm(s) or Other Real Estate • Owner | Approximate No. of Acres | County and State | Approximate Distance and Direction From a Named Town or Other Description |
|---|---|---|---|
| Warren F. & Fred D. Paulk | 44.81 | Atkinson, GA | Located approx. 2½ miles NE of Willacoochee, GA, Land Lots #434 & #441 in the Fifth Land District |
| Warren F. & Fred D. Paulk | 208 | Atkinson, GA | Located approx. 1 miles North of WILLACOOCHEE, GA on County Road, Land Lot #479 in the Fifth Land District |
| Marie Boone | 135 | Atkinson, GA | Located approx. 8 miles NE of Willacoochee, GA on County Road, Land Lot #64 in the Sixth Land District |

2. Disposition of such collateral is not hereby authorized.

3. Crops covered hereby are growing or are to be grown on, and any goods described in 1 (b) above which are or are to become fixtures are to be affixed to, the following-described real estate:

| Farm(s) or Other Real Estate • Owner | Approximate No. of Acres | County and State | Approximate Distance and Direction From a Named Town or Other Description |
|---|---|---|---|
| Emden McCranie | 220 | Atkinson, GA | Located approx. 6 miles South of Willacoochee, GA on County Maintained Rd., Land Lot #113 in the Fifth Land District |
| Jimmy B. Metts | 300 | Atkinson, GA | Located approx. 4 miles South of Willacoochee, GA on County Rd., Land Lot #26 in the Tenth Land District |

USDA-FmHA
Form FmHA 462-12
(Rev. 9-6-78)

### STATEMENTS OF CONTINUATION, PARTIAL RELEASE, ASSIGNMENT, ETC.

This STATEMENT is presented to filing officer for filing pursuant to the Uniform Commercial Code

| 1. Debtor(s): *(Last name first, and mailing address(es)* | 2. SECURED PARTY | No. of additional sheets presented· | 3. Maturity date *(if any)* |
|---|---|---|---|
| PAULK, Warren F. PAULK, Fred D. Route 2 Willacoochee, GA 31650 | UNITED STATES OF AMERICA acting through FARMERS HOME ADMINISTRATION P. O. Box 1344 Douglas, GA 31533 *(County Office Address)* | FOR FILING OFFICER ONLY *(Date, time, number and filing office)* File No: 82-80 Time: 9:00 Am Date: 11-6-86 Atkinson County Clerk Superior Court | |

4. This Statement refers to original Financing Statement No. ___82-80___
   Filed with ___Atkinson Co. Clk Sup. Ct.___ Date filed ___3-30-82___ 19___

5. ☒ Continuation. The original financing statement between the foregoing Debtor(s) and Secured Party, bearing file number shown above, is still effective.
6. ☐ Termination. Secured party no longer claims a security interest under the financing statement bearing file number shown above.
7. ☐ Assignment. The secured party's right under the financing statement bearing file number shown above to the property described in Item 10 have been assigned to the assignee whose name and address appears in Item 10.
8. ☐ Amendment. Financing Statement bearing file number shown above is amended as set forth in Item 10.
9. ☐ Partial Release. Secured Party releases the collateral described in Item 10 from the financing statement bearing file number shown above.
10.

And this Continuation Statement is to be indexed in the Real Estate Records.

GEORGIA, ATKINSON COUNTY

I, the Clerk of Superior Court, Atkinson County, do hereby certify that the within and forgoing is a true and correct copy of the original in my office on file and record in this office.

*Signature(s) of Debtor(s) (necessary only if Item 8 is applicable)*

This ___1st___ of ___May___, 19__90__

Diana Mullis, Dep.
Clerk, Superior Court, Atkinson County, Ga.

UNITED STATES OF AMERICA

By _____
EARL W DOUGLAS
Title County Supervisor
FARMERS HOME ADMINISTRATION

(1) Filing Officer Copy-Alphabetical
FmHA 462-12 (Rev. 9-6-78)

**464**

## EXHIBIT B

United States Bankruptcy Court for the
Southern District of Georgia
Case No. 582–00136
Adversary No. 583–0004
Filed May 5, 1983

In re: Warren F. Paulk and Fred W. Paulk, d/b/a Paulk Farms, Debtor,

United States of America, Plaintiff,

v.

Warren F. Paulk and Fred D. Paulk d/b/a Paulk Farms, Defendant.

### CONSENT ORDER

On or about January 27, 1983, the United States of America, acting by and through its agent, the Farmers Home Administration, United States Department of Agriculture ("FHA") filed a complaint to prohibit use, sale, or lease of collateral and to prohibit debtors' use of proceeds and debtor filed an answer thereto. Following discovery and notice, a hearing was commenced before this Court on May 3, 1983, and following same, FHA and Paulk Farms, defendant herein, presented to this Court this Consent Order resolving all issues addressed below and for good cause shown the parties having consented hereto, the parties herewith have stipulated the following facts:

1. Paulk Farms, debtor in possession, is currently engaged in the activity of farming and has 1983 crops with approximately 140 acres of bell peppers, 100 acres of cucumbers, 150 acres of wheat, 30 acres of egg plant, 60 acres of watermelon, and 20 acres of snap beans. Paulk Farms also currently plans to plant for the 1983 crop year 20 acres of peanuts and approximately 600 acres of soybeans. FHA does not consent herein to use of its cash collateral to plant peanuts or soybeans.

2. During the pendency of the Chapter 11 case, Paulk Farms has used approximately $225,000 from the proceeds of their 1982 crops on which FHA had a valid and perfected security interest which such proceeds constituted cash collateral. Such proceeds were used without the Consent of FHA and without the prior authorization of the Bankruptcy Court. Such proceeds have been utilized by Paulk Farms to cultivate, plant and maintain the above enumerated 1983 crops.

3. Paulk Farms has also obtained credit in the normal course of business from farm suppliers in the cultivation, planting and maintenance of the 1983 crops.

FHA and Paulk Farms having reached an agreement regarding the continued use of a portion of FHA's cash collateral and other collateral, it is herewith

ORDERED that, in order to continue to protect FHA and to continue the operation of Paulk Farms, Paulks Farms shall:

1. Maintain a checking account at the Exchange Bank in Douglas, Georgia. Such account shall be the only account maintained by Paulk Farms during the pendency of this Chapter 11 proceeding.

2. All expenses of Paulk Farms during the Chapter 11 proceeding other than nominal items must be paid by check. Each check shall contain a notation as to the specific item or items for which payment is made and a reference to any invoice, statement, or bill number furnished by the supplier (payee).

3. Any and all sales of crops shall be made for checks only and all such checks shall be made payable jointly to Paulk Farms and FHA. All checks shall be brought to FHA for copying and FHA shall endorse all such checks for deposit in Exchange Bank based upon a signed statement that the funds shall be used only for proper and necessary expenses relating to the 1983 crops which have already been planted including necessary living expenses.

4. Copies of the Exchange Bank statements and all checks shall be provided to FHA expeditiously following their receipt by Paulk Farms on a monthly basis.

5. Any and all expenses which must be made by cash shall be recorded in a cash journal and provided to FHA.

6. Paulk Farms shall provide to FHA an itemized statement for all credit which has been extended to it on a monthly basis by any other entity.

7. Pursuant to 11 U.S.C. § 364(a), Paulk Farms may continue to use the $225,000 which was or is cash collateral and which is otherwise secured by a crop lien pursuant to 11 U.S.C. § 552(b), for which a new financing statement will be filed, and so long as debtor obeys the order of the Court above such continued pre-existing lien shall constitute adequate protection for FHA and the automatic stay of 11 U.S.C. § 362 shall remain in effect. FHA's pre-existing lien shall not extend to a sum greater than $225,000 net proceeds from the 1983 crops.

8. Nothing in this Consent Order shall be construed as consent by FHA to any proposed plan of reorganization; or as an admission by FHA as to the feasibility of the reorganization of this debtor; or as to a waiver by FHA of any objection it has to any proposed plan for any reason, including non-compliance with the provisions of 11 U.S.C. § 363; and nothing herein shall constitute a waiver of FHA's legal rights to collect any and all other outstanding indebtedness.

IT IS SO ORDERED, this the 4 day of May, 1983, at Savannah, Georgia.

(s) Herman W. Coolidge
Judge, United States Bankruptcy Court Southern District of Georgia

Consented to:

Hinton R. Pierce

United States Attorney

(s) Melissa S. Mundell

Melissa S. Mundell

Assistant United States Attorney

Attorneys for the Plaintiff

Zusmann, Small & Stamps, P.C.

(s) Thomas P. Stamps

Thomas P. Stamps

Attorneys for Debtors

(s) Warren F. Paulk

Paulk Farms, Debtor

By: Warren F. Paulk, Partner